**UNITED STATES v. WOODSIDE et al.**
(two cases).

Nos. 538, 521.

District Court, W. D. South Carolina.

Aug. 13, 1940.

Samuel O. Clark, Jr., Asst. Atty. Gen., Andrew D. Sharpe and J. Leonard Lyons, Sp. Assts. to the Atty. Gen., and Oscar H. Doyle, U. S. Atty., and E. P. Riley, Asst. U. S. Atty., both of Greenville, S. C., for plaintiff.

W. B. McGowan, Wilton H. Earle, and A. C. Mann, all of Greenville, S. C., for defendants.

LUMPKIN, District Judge.

On May 7, 1940, this court issued its decree of foreclosure and sale in the case of the United States of America v. Robert I. Woodside et al., and on May 8, 1940, a similar decree was issued in the case of the United States of America v. John T. Woodside et al. The decree in each suit directed the sale of certain real estate therein described on account of the assessment of income taxes and interest thereon, which assessment was received by the Collector of Internal Revenue for the collection district of South Carolina on May 20, 1930, notice of each lien was filed on June 11, 1932, with the clerk of court for Greenville County, S. C., in which county the said defendants reside. The income tax lien entered against Robert I. Woodside was for the aggregate amount of $15,364.03, and that against John T. Woodside was in the aggregate amount of $52,182.63.

The real estate in each of these actions was duly sold by the marshal on sales day in June, 1940, and the entire proceeds of said sale were ordered to be paid to the clerk of the United States District Court for this District, to be held in the registry of the court until further order establishing the rank of the claims as between the City of Greenville, the County of Greenville, the State of South Carolina and the United States of America.

The question as to the priority or rank of these claims or liens in both suits was heard together, and the court is passing one order dealing with both cases, as the points involved are for practical purposes identical.

The action in the Robert I. Woodside case was commenced in October, 1936, and the action in the John T. Woodside case was commenced in December, 1937, both being suits in equity to enforce and foreclose the lien in favor of the United States on account of unpaid income taxes. There was no insolvency proceeding of any nature, but the question of priority of the respective liens arises in the distribution of the proceeds of sale held by the court under the decrees above referred to. Part of the properties are situate within the corporate limits of the City of Greenville, S. C., and against some of these properties there are unpaid paving assessments, most of which were assessed prior to 1930, and there are taxes due the City of Greenville, S. C., on the properties within its limits

since 1935, and there are state and county taxes due to the County of Greenville, S. C., since 1931, all of which is fully shown by the pleadings, and about which there is no question, the only question before the court being that of priority.

I make the following findings of fact in the Robert I. Woodside case:

The income tax lien of the Federal Government is in the amount of $15,364.03, and became effective May 20, 1930, which lien in favor of the United States of America is general and not specific against any property of the debtor.

The lien for state and county taxes owing to the County of Greenville, S. C., is in the sum of $1,694.06 through the year 1939, the taxes on the part of the property not having been paid since 1930, details of which are shown in the answer interposed by Greenville County, which lien is specific and charged against the respective pieces of property.

The lien for the paving assessments owing to the City of Greenville, S. C., is in the sum of $835.75, which lien was duly ratified on September 30, 1929, against the actual front footage of each respective lot as shown on a plat thereof, and same constitutes a specific lien against said lots on the front footage basis, and is not a charge against the owner.

The lien for taxes owing to the City of Greenville, S. C., is in the sum of $170.95 through the year 1939, which lien is specific against the respective lots as fully shown in the answer interposed by the City of Greenville, S. C.

All of the real property involved in this suit was conveyed away by the said Robert I. Woodside on January 23, 1931, to Securities Investment Company, which company held the legal title thereto until the sale on June 3, 1940, by foreclosure under decree passed by this court on May 7, 1940.

I make the following findings of fact in the John T. Woodside case:

The income tax lien of the Federal Government is in the amount of $52,182.63, and became effective May 20, 1930, which lien in favor of the United States of America is general and not specific against any property of the debtor.

The lien for state and county taxes owing to the County of Greenville, S. C., is in the sum of $369.21 through the year 1939, details of which are shown in the

answer and supplemental answer interposed by Greenville County, which lien is specific and charged against the respective pieces of property.

The lien for the paving assessments owing to the City of Greenville, S. C., is in the sum of $158.13, which lien was duly ratified on December 5, 1939, against the actual front footage of each respective lot, and same constitutes a specific lien against said lots on the front footage basis, and is not a charge against the owner.

The lien for taxes owing to the City of Greenville, S. C., is in the sum of $63.46 through the year 1939, which lien is specific against the respective lots as fully shown in the answer interposed by the City of Greenville, S. C.

All of the real property involved in this suit was conveyed away by the said John T. Woodside on June 25, 1932, to his wife Mrs. Lou C. Woodside, who held the legal title thereto until the sale on June 3, 1940, by foreclosure under decree passed by this court on May 8, 1940.

There are insufficient funds in both cases to satisfy the respective governmental units. The order of payment is necessarily dependent upon the facts and the law governing the contesting claimants' rights.

My conclusions of law under the facts and circumstances here in both cases are set forth below:

The Federal Government under authority of the 16th Amendment ratified February 25, 1913, was granted "power to levy and collect taxes on incomes" and the Enabling Acts subsequently passed provided machinery for enforcing the collection of said taxes. Under the circumstances therein named, Section 3466 of the Revised Statutes, 31 U.S.C.A. § 191, gives to the United States a prior lien for debts owing to the Government, and it is its contention in this case that said section is applicable, the claim being advanced that the judgment debtors are insolvent or committed an act of bankruptcy. It must be borne in mind that these suits were to foreclose the tax liens of the Government. In invoking this equitable remedy the suits are specifically brought under Section 3186 of the Revised Statutes, Sec. 3670–3677 of Title 26 U.S.C.A. Int.Rev.Code, and Section 3207 of the Revised Statutes, Sec. 3678, 3679 of Title 26 U.S.C.A. Int.Rev.Code. The first declares the lien and the latter provides the remedy for enforcing the lien.

■ There is no allegation or claim that the proceeds should be first applied to the Government's liens by reason of any of the circumstances enumerated in Section 3466. Any right of priority of the Government must necessarily arise at the time of the insolvency or the act of bankruptcy within the meaning of the statute as interpreted by the courts, and such right of priority apparently presupposes that the insolvent debtors' assets have passed into the hands of some administrative officer, agency or a third person for distribution among the debtors' creditors. Certainly the issue has to be made and some satisfactory showing made before such priority can be sustained.

■ This court cannot hold that there is the required showing of insolvency or of any act of bankruptcy or other circumstance entitling the Government to the priority authorized under the provisions of Section 3466.

The Government relies largely on the cases of the People of the State of New York v. Maclay, 288 U.S. 290, 53 S.Ct. 323, 77 L.Ed. 754; Exchange National Bank of Spokane v. United States, 147 Wash. 176, 265 P. 722, 62 A.L.R. 139; Spokane County v. United States, 279 U.S. 80, 49 S.Ct. 321, 73 L.Ed. 621. These cases are distinguishable from the case at bar, but it is noteworthy that they involve the distribution of the creditors' assets, and only personal properties were involved in the Spokane County cases, and the taxes levied were in personam and not in rem; and further, they recognize the preference of perfected or specific liens even in the distribution of an insolvent's property by a receivership. Here, we have no legal or administrative distribution of the debtors' entire assets, either as a bankrupt, insolvent or otherwise.

In addition to the obvious justice in the positions taken by the City and County of Greenville with reference to their taxes and paving assessment liens, there are a number of cases supporting their contentions in similar circumstances, where the Government's lien, as here, attached generally and not specific.

In City of Winston-Salem v. Powell Paving Company of North Carolina, D.C., decided June 15, 1934, 7 F.Supp. 424, 425, the court held: "Where statute creating general lien of United States for unpaid income taxes did not make lien prior to other liens but exempted lien as to mort-

gagees, purchasers, or judgment creditors until notice was filed by collector, lien operated as mortgage or judgment lien after notice, subject to enforcement at election of United States, and hence failure to sell land for taxes when lien attached rendered it subject to lien of state, county, and city for taxes accruing thereafter (26 U.S.C.A. § 115; Code N.C.1931, §§ 2713, 7880(147), 7880(150), 7880(174), 7987)."

Further, it was held:

"Under North Carolina law, lien of city for street improvements is lien against land and not a debt against owner provable against his estate. * * *

"Liens of state of North Carolina and of the United States on real estate of taxpayer for unpaid income taxes are 'general liens' having no priority over other tax liens, and attaching at time fixed by statute (26 U.S.C.A. § 115; Code N.C. 1931, §§ 7880(147), 7880(150), 7880(174)."

The situation in South Carolina is similar.

See, also, Owensboro Ditcher & Grader Co. v. Lucas, D.C.Ky., 1927, 18 F.2d 798; Exchange Nat. Bank of Tulsa v. Davy, D.C.Okl., 1936, 13 F.Supp. 226; In re Wyley Co., D.C.Ga., 1923, 292 F. 900; In re Knox-Powell-Stockton Co., 9 Cir., 100 F.2d 979; Claude D. Reese, Inc. v. United States, 5 Cir., 75 F.2d 9; Thelusson v. Smith, 2 Wheat. 396, 4 L.Ed. 271.

Not only is the court not convinced that the Federal Government has brought itself within the provisions of Section 3466 so as to entitle it to priority, but it would seem that the liens of the adverse claimants are sufficiently specific to entitle the local governmental units to priority, and I so conclude.

■ There is no dispute between the other two lien claimants, namely: The County of Greenville and the City of Greenville. Section 7470 of the 1932, S.C. Code, confers upon municipalities containing more than 5000 inhabitants, power to levy annual taxes "and the taxes so levied and also the penalty, shall constitute a lien upon the property upon which the said tax is levied until paid, paramount to all other liens except the lien for county and state taxes."

Section 2569 of the 1932, S.C.Code, provides that state and county taxes on property "shall be a first lien in all cases whatsoever upon the property taxed." Section 2571 provides that: "As soon as any property is listed with the auditor of any county in this State for taxation, such tax assessment shall immediately become a first lien on said property."

The regularity or legality of the liens for paving assessments due the City of Greenville, or the taxes due to it and the county, is not questioned, and it is not disputed that the properties are properly listed with the auditor and duly assessed for taxation. The unpaid taxes on the properties involved arose and were subsequent to May 20, 1930, but said assessments in all instances, except one or two of minor importance, were made against these properties while in the possession of other owners to whom the tax debtors had conveyed the same. For some reason the Government for many years made no effort to enforce its income tax lien against these properties, and in the meantime some of the properties were specifically assessed for paving improvements, and taxes were assessed in favor of the county and the city against said properties, and it would be inequitable in the circumstances to deny to these political units the right to collect their taxes in the face of the Government's unexplained long delay, and in the face of the fact that the paving assessments were legally made against some of the properties which became specific liens. The paving assessments against two of the John T. Woodside lots in the City of Greenville were assessed in 1939, and the paving assessments as against the Robert I. Woodside properties were assessed in 1929, prior to the origin of the Government's general lien for unpaid income taxes.

The paving assessments due and payable to the City of Greenville were authorized by Article X, Section 14 of the 1895, S.C. Constitution, as amended, and given active force by the provisions of the Enabling Acts of the State Legislature and the Ordinances of the City of Greenville, S. C. Such paving assessments are recognized as a form of tax given rank superior to that of mortgages by a holding of the S. C. Supreme Court in the case of Beatty v. Wittekamp, 171 S.C. 326, 172 S.E. 122.

After most careful consideration of the questions involved in this matter, the court concludes that the state and county taxes due and payable to Greenville County should first be paid out of the proceeds of sale in each case, which proceeds are in the hands of the officials of this court; that there should next be paid from such proceeds in each case the paving assess–

ments and taxes due and owing to the City of Greenville, S. C., and that the remaining funds in each case should be applied toward the payment of the income tax liens of the United States of America.

Let an order be presented in each case carrying into effect the foregoing, and it is so ordered.